IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RONALD MILAZZO,        ) | |
|        Plaintiff,        ) | |
|       ) | |
| v.        ) | Civil Action No. 1:19-cv-1607 |
|       ) | |
| ELITE CONTRACTING GROUP, INC.,        ) | |
|        Defendant.        ) | |

**MEMORANDUM OPINION**

On October 18, 2017, Plaintiff Ronald Milazzo, a tourist from New York, crashed into a metal beam ("Beam") while riding a bicycle south on the 900-block of South Royal Street in Alexandria, Virginia. The Beam that Plaintiff crashed into was part of a security gate ("Gate") on the 900-block of South Royal Street that limited entry to the area directly behind the Gate, which led to an underpass beneath I-495 and a bike path to the Mount Vernon Trail. Defendant Elite Contracting Group ("Defendant"), the sole defendant in this action,[1] does not own the Gate. Defendant also did not design, manufacture, or install the Gate. But at the time of Plaintiff's accident, Defendant held a task-order contract with the Virginia Department of Transportation ("VDOT"), the Gate's owner, to service and maintain the Gate.

The Complaint alleges that on October 18, 2017, and in the years preceding that date, Defendant (1) negligently failed to maintain the Gate and (2) negligently failed to warn oncoming bicyclists about the Gate. Defendant does not dispute that, as a maintenance contractor, Defendant had both a contractual and Virginia common law duty to *maintain* the Gate, and that if the Gate truly malfunctioned as a result of Defendant's negligence, then Defendant is liable here. But Defendant disputes that Defendant had a duty to *warn* oncoming bicyclists about the Gate, arguing

---

[1] VDOT is not a party to this action. *See* May 5, 2020 Order (Dkt. 17) (order granting Plaintiff's voluntary motion to dismiss VDOT from this action as a defendant).

that any such duty lies solely with VDOT, the property owner.

At issue now is Defendant's Motion *in Limine* to Exclude Evidence and Argument (Dkt. 96) that Defendant could or should have posted warning signs near the Gate, including a warning sign that would specifically instruct bicyclists on South Royal Street not to ride through the Gate. The matter has been fully briefed and argued, including a hearing on the matter on June 10, 2021. Additionally, the parties each submitted supplemental briefing on the matter, which also has been considered and reviewed. Accordingly, the matter is now ripe for disposition.

**I.**

The following record facts are pertinent to resolution of Defendant's Motion *in Limine* (Dkt. 96).

**A. The Gate**

- The Gate spans the width of the 900-block of South Royal Street in Alexandria, VA.

- The Gate is located near the Mount Vernon Trail, a trail for pedestrians and bicyclists.

- The Gate has yellow posts on each side that are connected by the Beam, which extends horizontally between the Gate's yellow posts.

- The Beam is sometimes recessed into a compartment in the roadway. In this respect, the Beam is designed (1) to retract from an above-ground position and enter into the roadway and (2) to rise from the below-ground position in the roadway to an above-ground position, on a timed basis after traffic passes through the Gate.

- Defendant did not design, manufacture, or install the Gate.

- Defendant does not own the land on which the Gate sits.

- VDOT placed a white sign near the Gate that says: "Authorized Vehicles Only." Defendant was not involved in the decision or placement of the "Authorized Vehicles Only" sign.

- There is a keypad near the "Authorized Vehicles Only" sign for an authorized user to type in a code and thereby lower the Gate and gain entrance.

- To the immediate right of the Gate, there is a paved path that goes around the Gate.

- The parties have submitted into the record video evidence of the Gate that post-dates Plaintiff's accident on October 18, 2017. This post-accident video evidence reflects that, in the autumn of 2017, (1) some bicyclists approaching the Gate traveled through the Gate and (2) that some bicyclists approaching the Gate travelled around the Gate on the paved path that is to the immediate right of the Gate.

- At the time of Plaintiff's accident, apart from the "Authorized Vehicles Only" sign, there was no sign near the Gate that specifically warned bicyclists not to travel through the Gate.

- The parties have submitted into the record an image of the Gate dated May 2017, five months prior to Plaintiff's accident on October 17, 2017.



Pl.'s Ex. 11 (Dkt. 22-11) (image on Gate dated May 2017).

### B. Contract to Maintain the Gate

- Defendant and VDOT have an annual task order contract ("Task Order Contract") which requires Defendant to maintain the Gate. Specifically:

    o (1) The Contract requires Defendant to perform "corrective" maintenance on the Gate "upon notification from VDOT," and

    o (2) The Contract requires Defendant to perform "preventative" maintenance on the Gate "on a -pre-arranged schedule."[2]

---

[2] Contract at 5 (Dkt. 97-4).

3

- The parties disagree whether the Contract requires Defendant to post warning signs near the Gate that would warn oncoming bicyclists not to travel through the Gate.

- Steven Weber, the VDOT employee who oversees administration of the Task Order Contract, has filed an Affidavit stating that the Contract:

    - (1) does not permit Defendant to post permanent warning signs about the Gate;

    - (2) permits only VDOT to post permanent warning signs about the Gate; and

    - (3) permits Defendant to post temporary warning signs "while it is on site performing maintenance and/or actively working on a project."[3]

- Defendant and VDOT also have a master contract ("Master Contract").[4] The parties disagree whether the Master Contract requires Defendant to post warning signs near the Gate that would warn oncoming bicyclists not to travel through the Gate.

## II.

The question presented by Defendant's Motion *in Limine* is whether a maintenance contractor—i.e., a contractor retained by the property owner *to maintain* a structure on the property—has a duty to warn the public that the structure it maintains might be dangerous. If a maintenance contractor does not have any contractual or Virginia common law duty to warn, then Plaintiff may not argue to the jury that Defendant should have posted a warning sign near the Gate to warn oncoming bicyclists that they should not travel through the Gate and that failure to post such a sign constituted negligence by Defendant.

Analysis properly begins with review of a property owner's duty to warn. Under Virginia law, a property "owner must give notice or warning of an unsafe condition which is known to him and unknown to [an] invitee, [but] such notice is not required where the dangerous condition is

---

[3] *See* Weber Affidavit ¶ 10 (Dkt. 97-6). Additionally, Virginia Code § 46.2-830 tasks the Virginia "commissioner of Highways" with the decision to "classify, designate, and mark state highways and provide a uniform system of traffic control devices for such highways." Va. Code § 46.2-830.

[4] Pl.'s Supp. Response (Dkt. 137).

4

open and obvious." *Tate v. Rice*, 227 Va. 341, 345 (1984). In certain circumstances, this well-settled duty to warn may be delegated to a contractor. For instance, this duty may be explicitly delegated by contract. *See, e.g., Boyd, Higgins & Goforth v. Mahone*, 142 Va. 690, 693 (Va. 1925) ("Under the contract it was the duty of the defendant [contractor] to establish and maintain barricades, danger warnings, and detour signs . . ."). Contractors may also assume a duty to warn at common law when their work itself gives rise to a dangerous condition on another's property. *See, e.g.*, *T. E. Ritter Corp. v. Rose*, 200 Va. 736, 741 (1959) (finding that a railroad contractor "owed a common law duty to guard the hazardous situation created by the work").

For reasons stated below, Defendant did not owe any contractual or common law duty to post a sign near the Gate to warn oncoming bicyclists that bicyclists should not travel through the Gate. Even assuming that VDOT (the property owner) owed a duty to warn bicyclists about the Gate, nothing in the record supports the contention that Defendant assumed that duty. First, the relevant contractual language does not explicitly delegate a duty to warn to Defendant. Second, Defendant did not give rise to the existence of the Gate, which pre-existed the relevant maintenance contract, and thus Defendant did not assume a common law duty to warn under operative Virginia or Fourth Circuit precedent. Accordingly, Defendant's Motion *in Limine* must be granted.

With respect to Defendant's contractual obligations, nothing in the Task Order Contract or Master Agreement supports the existence of a contractual duty of Defendant to warn in this case. The Task Order Contract and Master Agreement merely state that Defendant had a duty to warn of hazardous conditions that Defendant created during the course of Defendant's work on the Gate. For example, Plaintiff cites the following portions of the Master Agreement between Defendant and VDOT:

- "The contractor shall provide all safeguards, safety devices and protective equipment

> … reasonably necessary to protect the life and health of employees on the job and the safety of the public and to protect property *in connection with the performance of the work covered by the contract.*" *See* Dkt. 137-1 at 89 (emphasis added).

- "Contractor shall continuously maintain adequate protection of all persons and property from damage, injury or loss arising *in connection with this Contract.*" *See* Dkt. 137-1 at 55 (emphasis added).

Notably, this language does not impose a duty on Defendant as broad as Plaintiff contends; to the contrary, the contractual language gives rise to a duty to warn only with respect to work performed by Defendant in connection with the contract. In other words, under the Master Agreement, Defendant would need to take reasonable safety precautions when working on maintenance of the Gate. But that does not mean Defendant assumed a contractual duty to post warnings at all times, including when Defendant was not performing maintenance. And none of the other contractual language cited by Plaintiff arguably delegates from VDOT to Defendant a general duty to warn.[5] In sum, there is no basis in Defendant's contract with VDOT to conclude that Defendant had a contractual duty to warn Plaintiff about the Gate.

With respect to Plaintiff's argument about a common law duty to warn, pertinent Virginia and Fourth Circuit authority makes clear that Defendant did not owe a duty at common law to post general warning signs at the Gate. Specifically, relevant authority establishes that a maintenance contractor who does not have a contractual duty to warn could only have a duty to warn where the maintenance contractor (1) has recently worked on the property and (2) created a hazardous

---

[5] For example, Plaintiff notes that the Master Agreement references Defendant's previous work for VDOT, including the installation of signs. Put simply, a reference to past work does not equate to a promise to undertake a similar duty in the future. Other contractual provisions cited by Plaintiff covering "professional design elements required in Virginia" and "preventative maintenance" do not conceivably impose a duty to post general warning signs. *See* Dkt. 137-4 (collecting contractual language).

condition as a result of its recent work on the property.

In support of the existence of a duty to warn, Plaintiff cited five Supreme Court of Virginia cases, namely *Boyd, Higgins & Goforth v. Mahone*, 142 Va. 690 (1925), *Lasssiter & Co. v. Grimestead*, 146 Va. 773 (1926), *Pioneer Construction Company v. Hambrick*, 193 Va. 685 (1952), *Putnam v. Bero Engineering Corp.*, 195 Va. 161 (1953), *Ritter Corp. v. Rose*, 200 Va. 736 (1959). None of these cases supports the existence of a duty to warn here. Each case concerns a situation where a maintenance contractor (1) has recently worked on the property and (2) created a hazardous condition as a result of its recent work on the property. In this case, Defendant was not working on the property at the time of Plaintiff's accident. And Defendant did not create the hazardous condition which Plaintiff contends mandated signage (i.e. the existence and design of the Gate).

This conclusion is evident from the facts of the five cited Supreme Court of Virginia cases. First, in *Boyd, Higgins & Goforth v. Mahone*, the Supreme Court of Virginia affirmed a jury verdict which found a contractor liable for an accident on a stretch of road on which the contractor was working. Two important facts distinguish *Mahone* from this case: (1) the contractor in *Mahone* created the hazard by removing the flooring of a bridge without posting adequate warnings or barricades and (2) the contractor assumed an explicit contractual duty to post warnings. *See* 142 Va. at 692–93. Neither of those facts are present in this case. Unlike the contractor in *Mahone*, Defendant was not in the midst of active construction work at the time of Plaintiff's accident.

Similarly, in *Lasssiter & Co. v. Grimestead*, the defendant contractor created a hazard by leaving boards with nails in them laying in the street (one of which the plaintiff pedestrian stepped on). *See* 146 Va. at 776–77. Moreover, that case also involved "defendant's obligation under its contract with the city to keep the crossings of intersecting streets in a safe condition during the

progress of the work it was to do." *Id.* at 782. Thus, *Lassiter Co.* is closely aligned with *Mahone*: although the Supreme Court of Virginia found that the defendant contractor in *Lassiter Co.* owed a duty to warn, it is distinguishable from this case because the defendant (1) actively created the relevant hazard and (2) explicitly assumed a contractual duty to safeguard pedestrians. And, in *Pioneer Construction Co. v. Hambrick*, the defendant had dug the ditch into which the plaintiff pedestrian fell. *See* 193 Va. 687–88. Thus, unlike this case, the defendant's liability in *Pioneer Construction Co.* stemmed from its failure to place "any barricade, light, or other warning" around a hazard the defendant had actively created during the course of an ongoing construction project.

In *Ritter Corp. v. Rose*, the Supreme Court of Virginia succinctly summarized the principle animating the aforementioned decisions: all contractors owe "a common law duty to guard the hazardous situation *created by the[ir] work*, for the protection of the safety of persons lawfully using the premises." 200 Va. at 741 (emphasis added). In other words, a contractor's duty to warn is triggered only when the contractor's work gives rise to a hazard. In *Ritter Corp.*, for example, liability stemmed from the fact that, during the course of an ongoing construction project, the defendant contractor's earth mover was driven across railroad tracks without adequate safeguards and struck by a train. *Id.* at 737–38.

The cases outlined above establish that contractors assume a duty to warn when they create a danger and fail to safeguard it. But they do not stand for a broader proposition, namely that a contractor must warn of *any* danger in the area of the contractor's work, even if the contractor did not create the hazard. The final Virginia case cited by Plaintiff, *Putnam v. Bero Engineering Corp.*, demonstrates this point well. There, the defendant had been hired by the Commonwealth of Virginia to construct a new stretch of road, but the Commonwealth created a traffic crossover to avoid the construction and the plaintiff's accident occurred at that crossover. *See* 195 Va. at 162–

64. The court held that, because the defendant had not created the crossover, "it therefore owed no common-law duty to the plaintiff to provide … adequate warning signs." *Id.* at 165. Thus, although a hazard existed within the general construction site on which the *Putnam* defendant was working, the Supreme Court of Virginia deemed the defendant not liable for the plaintiff's accident because the defendant did not create the hazard. *Id*. Like the defendant in *Putnam*, Defendant here did not create the Gate or any other hazard in the area and thus had no common law duty to warn.

Plaintiff also cites a handful of federal cases in support of the contention that Defendant owed Plaintiff a common law duty to warn about the Gate, but none establishes such a duty. Plaintiff first cites the Fourth Circuit's decision in *Contino v. Baltimore & A. R. Co.*, which affirmed the defendant railroad's liability for an accident in which a truck driver struck a railroad overpass without adequate height warnings. First, it bears noting that that case arose under Maryland law. Moreover, *Contino* is readily distinguishable from this case because the defendant railroad actively participated in the planning and construction of the overpass, and thus "subjected itself to liability for damages from failure to give warning by joining in the construction of a crossing so dangerous that warning signs became imperative." 178 F.2d at 525.

Plaintiff also cites the Fourth Circuit's decision in *Citizens and Southern Nat. Bank of S. C. v. Dickerson, Inc.*, which arose under South Carolina law. In that case, again, the liable contractor created the relevant hazard. Specifically, the defendant contractor had erected a "flimsy" temporary guardrail, and a portion of the guardrail had come loose and struck the passenger of a passing automobile. 370 F.2d at 694–95. Plaintiff's only other federal citation is *Radosavic v. Va. Intermont College*, 651 F. Supp. 1037 (W.D. Va. 1987). Presumably, Plaintiff cites that case for a brief reference to a "tort duty" under Virginia law imposed on "persons constructing or repairing roads." *Id.* at 1041. As discussed above, however, that duty clearly only

9

extends to circumstances in which the construction or repair work itself creates a hazard.

Plaintiff's final authority is Va. Model Jury Instruction § 32.040, which states, "A city has a duty to use ordinary care to [warn of] a defect [in] a [street] within a reasonable time after it has notice of the defect." Again, however, presuming that VDOT owed Plaintiff and other bicyclists a duty to warn about the Gate, there is no sound basis on which to conclude that Defendant assumed that duty. First, VDOT did not delegate that duty to Defendant by the terms of the maintenance agreements between VDOT and Defendant. And because the Gate was not a hazard created by Defendant, Defendant had no duty under Virginia common law to warn cyclists about the Gate.

In sum, no authority cited by Plaintiff supports the contention that Defendant owed Plaintiff a general duty to warn under Virginia law. In each case in which the Supreme Court of Virginia or the Fourth Circuit found a common law duty to warn, the contractor had actively participated in the creation of the hazard. But where, as here, a maintenance contractor is hired to service a pre-existing feature of an owner's property, there is no such duty to warn. Here, Defendant took no part in designing, constructing, or installing the Gate. Thus, to the extent that the Gate had dangerous features which merited additional warning signs, the duty to place such signs did not fall on Defendant under Virginia common law.

The distinction between a contractor who creates a hazard and a contractor who is hired to service a pre-existing hazard is supported by reasonable considerations. In general, the duty to warn falls on the owner of property. *See Tate,* 227 Va. at 345. But when a contractor's work directly creates a hazard, the contractor is in the best position to know about and safeguard others from the hazard, and it is sensible to place a duty to warn on the contractor. By contrast, when a landowner contracts with a third party to service an existing feature of their property, the landowner is already well aware of the relevant feature. For instance, in this case, Plaintiff does

not contend that VDOT was somehow unaware of the existence of the Gate. In such cases, therefore, there is no need to shift the duty to warn from the property owner (or other party who created the hazard) to the maintenance contractor.

Here, Plaintiff does not contend that Defendant contributed to the construction or installation of the Gate or was performing maintenance work on the Gate at the time of the accident. To the extent that Plaintiff can prove that Defendant negligently maintained the gate, and that negligent maintenance created a malfunction which contributed to Plaintiff's accident, Plaintiff may be able to recover against Defendant. But, beyond that, the facts of the case do not support the contention that Defendant assumed a duty to post general warning signs, either under contract or at common law. Accordingly, because Defendant had no contractual or common law duty to warn about the Gate, Plaintiff is not permitted to argue or offer evidence that Defendant should have posted general warning signs at the Gate and that failure to post signs constituted negligence.

### III.

In sum, for the reasons expressed in this Memorandum Opinion, Defendant's Motion in *Limine* (Dkt. 96) must be granted.

An appropriate Order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record.

Alexandria, Virginia
October 6, 2021

/s/
T. S. Ellis, III
United States District Judge